IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TREND MICRO, INC., | |
| Plaintiff, | Case No. 3:22-cv-00518-N |
| v. | **JURY TRIAL DEMANDED** |
| TAASERA LICENSING LLC, | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, TO TRANSFER OR STAY UNDER THE FIRST-TO-FILE RULE, AND TO DISMISS FOR FAILURE TO STATE A CLAIM, AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................2

III.   ARGUMENT ........................................................................................................4

    A.     The First-Filed Case Doctrine Should Not Apply Here Because Well-
           Recognized Equitable Exceptions to that Doctrine are Present ............................ 4

         1.     Federal Circuit Law Controls ...................................................... 4

         2.     This Court May Decide Whether Equitable Exceptions to the First-Filed
             Case Doctrine Apply .................................................................... 4

         3.     The Peculiar Circumstances of this Action Weigh Against the Application
             of the First-Filed Case Doctrine ................................................... 5

             a.     The Circumstances Surrounding Defendant's Eastern
                 District Action Indicate Blatant Forum Shopping .........................6

             b.     Plaintiff Is a Desirable or Necessary Party for Which
                 Venue in the Eastern District Would Be Improper .........................7

             c.     The 28 U.S.C. § 1404(a) Factors Strongly Favor
                 Maintaining this Action in this District ..........................9

    B.     This Court Has Subject Matter Jurisdiction Over This Action ........................... 15

    C.     Plaintiff's DJ Complaint Adequately Pleads Non-infringement ......................... 18

IV.    CONCLUSION.....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
    466 F.3d 1000 (Fed. Cir. 2006)................................................................18

*Amazon.com, Inc. v. Corydoras Techs., LLC*,
    1:19-CV-1095-RP, 2020 WL 1644005 (W.D. Tex. April 2, 2020).......................5

*Andra Grp., LP v. Victoria's Secret Stores, LLC*,
    6 F.4th 1283 (Fed. Cir. 2021) ................................................................9

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020).........................................................11, 14

*Applied Materials, Inc. v. Demaray LLC*,
    2021 WL 4222177 (N.D. Cal. Sept. 16, 2021) ........................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................18

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ...............................................................19

*Boyd v. C.R. Bard. Inc.*,
    Civ. A. No. 3:20-cv-1554-S, 2020 WL 5211229
    (N.D. Tex. Aug. 31, 2020) ....................................................... 10-11, 13

*Communications Test Design, Inc. v. Contec, LLC*,
    952 F.3d 1356 (Fed. Cir. 2020).............................................................4

*Compare Bedrock Logistics, LLC v. Braintree Labs., Inc.*,
    No. 3:16-cv-2815-M, 2017 WL 1547013 (N.D. Tex. April 28, 2017)...................6

*Danisco U.S. Inc. v. Novozoymes A/S*,
    744 F.3d 1325 (Fed. Cir. 2014)........................................................ 16-17

*Disc Disease Sols., Inc. v. VHG Sols., Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)........................................................18, 20

*Elecs. for Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005)......................................................... 4-5, 10

*Emerson Process Mgmt. LLLP v. Wetro Lan, LLC*,
    No. A–15–CA–416–SS, 2015 WL 11438109 (W.D. Tex. Sept. 2, 2015)............ 6-7

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
    737 F.3d 704 (Fed. Cir. 2013)...............................................................4, 8

*Genentech, Inc. v. Eli Lilly and Co.*,
  998 F.2d 931 (Fed. Cir. 1993), *abrogated on other grounds
  by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ................................................5

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) .........................................................................20

*In re Hulu LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................13

*In re Juniper Networks, Inc.*,
  14 F. 4th 1313 (Fed. Cir. 2021) ................................................................ 11-14

*Kahn v. General Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989)..................................................................6, 7

*In re Netflix, Inc.*,
  No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ............................... 11-12

*Nexon Am. v. Uniloc 2017 LLC*,
  No. 19-1096-CFC, 2020 WL 3035647 (D. Del. June 5, 2020)............................... 8-9

*In re Nitro Fluids L.L.C.*,
  978 F.3d 1308 (Fed. Cir. 2020).......................................................................10

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*,
  851 F. Supp. 2d 544 (S.D.N.Y. 2012).............................................................16

*In re Samsung Elecs. Co., Ltd.*,
  2 F.4th 1371 (Fed. Cir. 2021) ..................................................................13, 14

*SanDisk Corp. v. STMicroelectronics, Inc.*,
  480 F.3d 1372 (Fed. Cir. 2007).................................................................15, 17

*Taasera Licensing LLC v. Trend Micro Incorporated*,
  2-21-cv-441 (E.D. Tex. Nov. 30, 2021).............................................................2

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
  137 S. Ct. 1514 (2017)....................................................................................1

*Teva Pharma. USA, Inc. v. Novartis Pharma. Corp.*,
  482 F.3d 1330 (Fed. Cir. 2007)................................................................. 15-17

**Statutes**

28 U.S.C. §1400(b) ...................................................................................1, 9

28 U.S.C. § 1404(a) .............................................................................. 2, 10-11

Fed. R. Civ. P. 12(b) ..................................................................................................................4

Fed. R. Civ. P. 19(a)(3)..........................................................................................................8, 18

Plaintiff Trend Micro, Inc., a California corporation ("Trend Micro" or "Plaintiff"), by and through its undersigned counsel, responds and objects to the Motion to Dismiss filed by Defendant Taasera Licensing LLC ("Taasera" or "Defendant") as follows:

## I.     INTRODUCTION

This is an action in which Trend Micro seeks a declaratory judgment of non-infringement of nine patents purportedly owned by Defendant.  Trend Micro filed this action after Defendant sued Trend Micro Incorporated ("Trend Micro Japan"), a related but distinct entity formed under the laws of Japan, in the Eastern District of Texas for alleged infringement of the same nine patents.  Defendant's infringement suit in the Eastern District identifies various accused products—all of which are sold in the United States exclusively by the instant Plaintiff (*i.e.*, the Trend Micro US operating entity) and *not* by the Japanese entity.

Defendant had no legitimate justification for filing its offensive patent case in the Eastern District.  Rather, in a blatant attempt at forum shopping, Defendant strategically omitted Plaintiff from its Eastern District complaint in an effort to maintain venue there and thus make an end run around the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), holding that pursuant to 28 U.S.C. §1400(b), domestic defendants can be sued for patent infringement only in districts in which they reside or in which they have committed acts of alleged infringement and have a regular and established place of business.  Neither Plaintiff nor Trend Micro Japan reside or have places of business in the Eastern District.  And Defendant's ties to the Eastern District are ephemeral and artificial, as shown by its recent formation and its lack of physical presence there.

Defendant's arguments for dismissing or transferring this action all lack merit.  *First*, Defendant's argument that this Court should apply the first-filed case doctrine should fail.  Here, several recognized exceptions to that doctrine apply.  Defendant clearly made the decision not to

1

name the instant Plaintiff in the Eastern District action based on forum shopping—*i.e.*, solely because Trend's presence would render venue in that district improper. The "necessary/desirable party" exception counsels that this action remain pending with this Court, as Trend Micro is a necessary and/or desirable party to the Eastern District action but is not subject to venue in that district. Moreover, the venue transfer factors of 28 U.S.C. § 1404(a) also weigh against application of the first-filed case doctrine in these circumstances. This district is clearly a more convenient forum for both the parties and the witnesses.

*Second*, Defendant's argument that this Court lacks subject matter jurisdiction over this declaratory judgment suit also fails. Defendant's lawsuit in the Eastern District implicates Plaintiff as the purported direct infringer of the nine patents-in-suit. Accordingly, Defendant's offensive infringement allegations gave rise to an actual case or controversy in which Trend Micro and Defendant have adverse legal interests. Thus, all relevant circumstances indicate that there is an actual, justiciable controversy between the parties, creating subject matter jurisdiction.

*Third*, Trend's declaratory judgment complaint ("DJ Complaint") presents factual allegations which state a plausible claim for a judgment of non-infringement by Trend Micro of the asserted patents. Contrary to Defendant's assertions, Trend Micro is not required to plead specific facts proving a negative proposition (*i.e.* that it does not infringe the patents-in-suit); rather, the DJ Complaint need only place Defendant on notice of the claims being presented. Because the DJ Complaint does so, dismissal is inappropriate.

For these reasons, and as articulated in the sections that follow, Defendant's Motion to Dismiss should be denied in its entirety. Respectfully, this case should proceed in this Court.

## II.    BACKGROUND

On November 30, 2021, Defendant sued Trend Micro Japan in the Eastern District of Texas for alleged infringement of nine patents. *See* Dkt. 14, at Ex. 1 (Complaint, *Taasera*

*Licensing LLC v. Trend Micro Incorporated*, 2-21-cv-441 (E.D. Tex. Nov. 30, 2021)) (the

"Eastern District Action").  Plaintiff in this DJ action is a U.S. operating company related to

Trend Micro Japan.  Trend Micro Japan does not conduct operations in the United States.  *See*

App. 20-22.  The instant Plaintiff does.

In the Eastern District Action, Defendant alleges infringement by the sale of various

Trend Micro products—which are sold in the United States by Plaintiff, not by Trend Micro

Japan.  Specifically, Defendant asserts that Trend Micro Japan "knowingly induce[d] others,

including [Trend Micro Japan] subsidiaries . . . to directly infringe" the asserted patents.  Dkt. 14,

Ex. 1, at ¶¶ 38, 49, 60, 75, 88, 104, 119, 133, 145.  Thus, on the face of Defendant's complaint,

the Eastern District Action identifies Plaintiff Trend Micro and contends that Trend Micro, as a

US-based "subsidiar[y]" of Trend Micro Japan, directly infringes the asserted patents through its

sales of the accused products in the United States.

In view of Defendant's allegations in the Eastern District Action, Plaintiff filed this

action on March 4, 2022, seeking a declaratory judgment of non-infringement as to the nine

patents asserted in the Eastern District Action.  *See* Dkt. 1.  In its DJ Complaint, Trend Micro set

forth the facts informing its objective understanding that the Eastern District Action created a

justiciable controversy between Defendant and Plaintiff.  The DJ Complaint explains that

Plaintiff, a subsidiary of Trend Micro Japan, "directs and controls the sale of" the accused

products "in the United States."  *Id.* at ¶ 6.  The DJ Complaint further observes that in the

Eastern District Action, Defendant alleges that certain features of Trend Micro's products

infringe one or more claims of the asserted patents.  *Id.* at ¶¶ 20-25.  Trend Micro requests

declaratory relief because its products, through the accused features or otherwise, do not infringe

the asserted patents.  *See id.* at ¶¶ 33-66.

3

### III.    ARGUMENT

Defendant asserts that the instant action should be transferred or stayed under the first-filed case doctrine and that the DJ Complaint should be dismissed under Rules 12(b)(1) and 12(b)(6). Each of these arguments is unavailing.

### A.   The First-Filed Case Doctrine Should Not Apply Here Because Well-Recognized Equitable Exceptions to that Doctrine Are Present

Defendant asserts that this action should be transferred or stayed under the first-filed case doctrine. The circumstances of this case, however, weigh against application of that doctrine.

#### 1.    Federal Circuit Law Controls

In patent cases, "[r]esolution of whether [a] second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by [Federal Circuit] law." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013); *see also Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005). Because the issue falls within its exclusive subject matter jurisdiction, the Federal Circuit "do[es] not defer to the procedural rules of other circuits." *Communications Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (quoting *Serco Servs. Co., L.P. v. Kelley Co, Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995)). Thus, the Court should look to Federal Circuit precedent in determining whether the first-filed case doctrine applies. To the extent Plaintiff presents arguments based on regional circuit law, those cases are not controlling in this Court's analysis. *See* Dkt. 14, at 7-10.

#### 2.    This Court May Decide Whether Equitable Exceptions to the First-Filed Case Doctrine Apply

Contrary to Defendant's assertions otherwise, this Court may decide whether exceptions to the first-filed case doctrine exist. Defendant incorrectly relies upon Fifth Circuit law in arguing that only the first-filed court may determine whether any exceptions apply. *See* Dkt. 14, at 9. As mentioned, in a case arising under the patent laws, it is Federal Circuit law which

governs the question of which court must determine whether the doctrine or one of its exceptions applies. *Elecs. For Imaging*, 394 F.3d at 1345-46. The Federal Circuit has not directly addressed this issue, but nevertheless has "endorsed the practice of the second court deciding the applicability" of some exceptions to the first-filed doctrine. *Amazon.com, Inc. v. Corydoras Techs., LLC*, 1:19-CV-1095-RP, 2020 WL 1644005, at *3 (W.D. Tex. April 2, 2020) (further noting that "this Court would not necessarily hold, as the Eastern District did, that the first-filed court should 'always' determine the cessation of the second case . . . .") (citing *Katz v. Lear Singer, Inc.*, 909 F.2d 1459, 1492 (Fed. Cir. 1990) (permitting the second-filed court to enjoin a party from pursuing claims in the first-filed court)). Thus, it is appropriate for this Court to determine whether the first-filed case doctrine or an exception applies.

### 3.     The Peculiar Circumstances of this Action Weigh Against the Application of the First-Filed Case Doctrine

Under the circumstances presented in this case, the Court should decline to apply the first-filed case doctrine. While "[t]he general rule favors the forum of the first-filed action," "[e]xceptions are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (citing *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081–83 (Fed. Cir. 1989)). Thus, "[t]he preference for the first-filed suit, may, in the trial court's discretion, yield to the forum in which all interests are best served." *Id.* (internal quotation marks omitted) (quoting *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 184 (1952)). In this case, justice, expediency, and the best interests of the parties and witnesses will be best served if the Court exercises its considerable discretion and declines to apply the first-filed case doctrine.

5

a. **The Circumstances Surrounding Defendant's Eastern District Action Indicate Blatant Forum Shopping**

The circumstances surrounding the Eastern District Action reflect a brazen attempt at forum shopping, which weighs against application of the first-filed case doctrine.  In *Kahn*, the Federal Circuit recognized that an exception to the first-filed case doctrine exists where "forum shopping alone motivated the choice of sites for the first suit."  889 F.2d at 1081-83.  While the forum shopping exception is often applied where the first-filed suit is "anticipatory" in nature, meaning it was "designed to preempt the second filer's suit and to secure the first filer's forum choice," evidence of forum shopping has been found to weigh against applying the first-to-file rule in non-anticipatory contexts as well.  *Compare Bedrock Logistics, LLC v. Braintree Labs., Inc.*, No. 3:16-cv-2815-M, 2017 WL 1547013, at *2 (N.D. Tex. April 28, 2017) (declining to apply first-filed case doctrine based on forum shopping in anticipatory context) *with Emerson Process Mgmt. LLLP v. Wetro Lan, LLC*, No. A–15–CA–416–SS, 2015 WL 11438109, at *1-2 (W.D. Tex. Sept. 2, 2015) (same result in non-anticipatory context).

The *Emerson Process Management* court dealt with a declaratory judgment action which was filed after the defendant sued declaratory judgment plaintiff EPM's parent company in another venue.  2015 WL 1143819, at *1.  The court gave significant weight to the fact that the circumstances of the first-filed action were "peculiar."  *Id.* at *2.  In particular, EPM's parent entity was "a holding company at the very top of the Emerson corporate pyramid which has nothing to do with the production or marketing of the [accused product].  According to EPM, it, not [the related company] makes and markets the allegedly infringing product."  *Id.* at *1.  Thus, the court found it suspicious that "Wetro chose to sue EPM's parent, a large holding company, rather than EPM.  While Wetro Lan argues EPM and Emerson Electric Co. should be treated as the same entity, it provides no evidence in support of that claim . . . ."  *Id.* at *2.  These

6

circumstances, paired with the fact that venue was improper in the first-filed jurisdiction as to

EPM, convinced the court that applying the first-filed case doctrine was improper.

Similarly here, the forum-shopping exception should apply and the first-filed case

doctrine should not be invoked to transfer this action from this judicial district.  *See Kahn*, 889

F.2d at 1081–83.  Defendant engaged in forum shopping by suing Trend Micro Japan, a foreign

holding company "at the top of the [Trend Micro] corporate pyramid," in the Eastern District and

declining to name the US operating company—the alleged direct infringer.  Defendant's decision

to name Trend Micro Japan and not the instant Plaintiff is "peculiar," given that the instant

Plaintiff (according to Taasera's own pleading) is responsible for implementing and selling the

accused technology in the United States.  *Emerson*, 2015 WL 11438109, at *1-2.  The peculiarity

of the circumstances surrounding the Eastern District Action is highlighted by Defendant's

admission that it "knew of Trend Micro [US] and its activities," but nevertheless decided to sue

only Trend Micro Japan.  *See* Dkt. 14, at 5.  This admission strongly suggests an ill motive or

forum shopping by Defendant.  Also indicative of forum shopping is the fact that Defendant's

counsel has repeatedly pursued this type of strategy (*i.e.*, suing only related foreign entities and

excluding US operating companies) in other recent Eastern District cases.  *See* App. 3-4.

For the reasons discussed further in Section III.A.3.b below, Defendant could not have

maintained venue with Plaintiff named in the Eastern District Action.  Defendant clearly chose to

sue only Trend Micro Japan—the foreign entity—in an attempt to maintain its preferred venue in

the Eastern District.  Thus, the forum shopping exception applies and this Court should decline

to apply the first-filed case doctrine.

   **b.**  **Plaintiff Is a Desirable or Necessary Party for Which Venue in the Eastern District Would Be Improper**

Another equitable exception to the first-filed case doctrine exists when there is an

absence of jurisdiction over all necessary or desirable parties. *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013); Fed. R. Civ. P. 19(a)(3) ("If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party."); *Nexon Am. v. Uniloc 2017 LLC*, No. 19-1096-CFC, 2020 WL 3035647, at *4 (D. Del. June 5, 2020). *Nexon* is especially instructive. There, patent licensing entity Uniloc filed a patent infringement suit in the Eastern District of Texas, naming Nexon's foreign affiliates, Nexon Japan and Nexon Korea. *Nexon*, 2020 WL 3035647, at *2. Nexon America then filed a declaratory judgment action against Uniloc in the District of Delaware. Uniloc moved to dismiss the Delaware action, arguing that its Texas suit against the foreign entities should move forward under the first-filed case doctrine. *Id.* The court disagreed, explaining, "I will not apply the first-filed rule here because the Eastern District does not have venue over Nexon America and Nexon America is a desirable, if not necessary, party to that case and will not consent to venue in the Eastern District." *Id.* at *4. Nexon America was a desirable or necessary party to the Texas suit because it alone developed and sold the technology at issue in the United States. *Id.* And Nexon America was not subject to venue in the Eastern District of Texas because it did not "reside" in the district and did not "commit[] acts of infringement and [] have a regular and established place of business in the Eastern District." *Id.* Under those circumstances, applying the first-filed doctrine was improper, and the declaratory judgment action could move forward.

Similarly here, Plaintiff is a necessary or desirable party for which venue in the Eastern District of Texas would be improper. Like the foreign companies named as defendants in *Nexon*, Trend Micro Japan does not conduct United States operations. *See* 2020 WL 3035647, at *2; *see also* App. 21-22. Instead, all United States sales of Trend Micro products are conducted by Plaintiff, the U.S. operating company. *Id.* Because all U.S. activity concerning the accused

8

products is conducted by Plaintiff, it is a "desirable, if not necessary, party to that case." *See id.*
at *4. And like the declaratory judgment plaintiff in *Nexon*, Plaintiff is not subject to venue in
the Eastern District of Texas.

Venue for patent actions under 28 U.S.C. §1400(b) is proper only where "the defendant
resides, or where the defendant has committed acts of infringement *and* has a regular and
established place of business." *Andra Grp., LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283,
1287 (Fed. Cir. 2021). Trend Micro is a California corporation and therefore does not "reside"
in the Eastern District of Texas. *Id.* And Trend Micro does not have a "regular and established
place of business" in the Eastern District, either. *Id.*

"To show that a defendant has a regular and established place of business, there are three
requirements: (1) there must be a physical place in the district; (2) it must be a regular and
established place of business; and (3) it must be the place of the defendant." *Id.* (internal
quotation marks omitted). Trend Micro does not have a "physical place" in the Eastern District,
nor does it have a "regular and established place of business," which would require "the regular,
physical presence of an employee or other agent of the defendant conducting the defendant's
business at the alleged place of business." *Id.*; *see* App. 21-22. Because Trend Micro does not
reside in or have a "regular and established place of business" in the Eastern District, it is not
subject to venue in that district. Given that Plaintiff "is a desirable, if not necessary, party to that
case and will not consent to venue in the Eastern District," the desirable party exception to the
first-filed case doctrine applies and this Court should not stay or transfer this action in favor of
the Eastern District Action. *Nexon*, 2020 WL 3035647, at *4.

      **c.**     **The 28 U.S.C. § 1404(a) Transfer Factors Strongly Favor
Maintaining this Action in this District**

In addition to considering issues of justice and equity, Federal Circuit precedent indicates

that courts may also consider the traditional 28 U.S.C. § 1404(a) venue transfer factors when
determining whether an exception to the first-filed case doctrine applies.  *In re Nitro Fluids
L.L.C.*, 978 F.3d 1308, 1310 (Fed. Cir. 2020).[1]  If the "balance of the transfer factors favor[s] the
second-filed court," then the court may decline to apply the first-filed case doctrine.  *Id.* at 1312.
The Section 1404(a) analysis considers certain private and public interest factors.

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the
availability of compulsory process to secure the attendance of witnesses; (3) the cost of
attendance for willing witnesses; and (4) all other practical problems that make trial of a case
easy, expeditious and inexpensive."  *Boyd v. C.R. Bard. Inc.*, Civ. A. No. 3:20-cv-1554-S, 2020
WL 5211229, at *2 (N.D. Tex. Aug. 31, 2020) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235,
242 n.6 (1981)).

Under the facts of this case, at least three of the private interest factors weigh strongly in
favor of maintaining this action in this judicial district.  Trend Micro has its headquarters in
Irving, Texas, within this judicial district.  App. 21.  It has approximately 380 employees
working within 12 miles of this courthouse, who collectively possess knowledge concerning
Trend Micro's finances, marketing, operations, sales, and product features.  *See id.*  In contrast,
Trend Micro has no employees in the Eastern District.  App. 22.  Trend Micro has no real estate
in the Eastern District.  *Id.*  It has no facilities in the Eastern District, and no documents there.
*Id.*  Thus, several of the private interest factors—in particular the "relative convenience for and
cost of attendance of [willing] witnesses," the "relative ease of access of sources of proof," and

---

[1] In *Nitro Fluids*, the Federal Circuit accepted the trial court's premise that Fifth Circuit precedent
applied, though it noted that the result would be the same under Federal Circuit law.  *Nitro Fluids*,
978 F.3d at 1311.  As discussed above, however, Federal Circuit law controls in resolving
questions of whether the first-filed case doctrine applies in the context of patent-related suits.
*Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005).

the "availability of compulsory process," favor maintenance of this action in this district.   *In re Juniper Networks, Inc.*, 14 F. 4th 1313, 1318 (Fed. Cir. 2021); *Boyd*, 2020 WL 5211229, at *2.

*First*, the "single most important factor in [the] transfer analysis," the "relative convenience for and cost of attendance of witnesses," weighs strongly in favor of adjudication in this district. *Juniper Networks*, 14 F.4th at 1318; *see also In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *2 (Fed. Cir. Jan. 19, 2022).   In analyzing this factor, "the Fifth Circuit uses the '100-mile rule,' which provides that when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020).

Here, Trend Micro's witnesses will be employees who possess knowledge regarding Trend Micro's operations in the United States and also regarding the research, development, and operation of the products at issue.   App. 21-22.   These witnesses work at Trend Micro's headquarters in Irving, Texas—within this judicial district—and in Northern California and Taiwan.   *Id.*   All of these witnesses would be severely inconvenienced by the trial of this action in Marshall, Texas—a venue more than 100 miles from Dallas and from any Trend Micro office. App. 6.   If Trend Micro's witnesses were called to testify in this Court, they could work from the Trend Micro facilities in Irving, with greater access to coworkers and Trend Micro systems and documents.   App. 22.   This access would not exist in Marshall, and witnesses would be inconvenienced by the disruption to their ability to work.   *Id.*

To the extent that Defendant intends to call witnesses other than just experts, those witnesses are from outside Texas and travel to Dallas is therefore far easier than travel to Marshall.   App. 7.   For example, the inventors on the patents-in-suit are in the greater New York

City/Philadelphia area and in California.  App. 4.  Defendant's managing agents are also in the greater New York City area.  App. 4.  All of these witnesses would likely fly into Dallas/Fort Worth.  App. 8.  Moreover, there are various third party witnesses such as prior art inventors who, if willing to testify, would have much easier access to the courthouse in Dallas than to the courthouse in Marshall.  App. 2-3.  This "most important" factor—the convenience to willing witnesses—therefore weighs strongly in favor of maintaining this action in this judicial district. *E.g.*, *Juniper Networks*, 14 F. 4th at 1318.

*Second*, the "availability of sources of proof" factor favors maintenance of this action in the Northern District of Texas.  *Juniper Networks*, 14 F. 4th at 1321.  Evidence relating to the products at issue will be relevant to the determination of the issues presented in this case.  *See id.*; *see also Netflix*, 2022 WL 167470, at *2 (acknowledging that in patent cases, the "bulk of the relevant evidence" is in the possession of the accused infringer).  Some of that evidence is available at Plaintiff's offices, including at its headquarters here in the Dallas area.  App. 21.  By contrast, no documents are maintained by Plaintiff (or by Defendant, in all probability) in the Eastern District of Texas.  *See id.*  The "difference[s] between the two venues with respect to sources of proof" therefore weighs in favor of maintenance of this action in this judicial district. *Juniper Networks*, 14 F.4th at 1321.

*Third*, the "availability of compulsory process" factor also weighs in favor of maintaining the case here.  As one example, to date Trend Micro has identified at least eight non-party inventors in the Dallas area, within 100 miles of this courthouse, who worked on technology that appears to be relevant prior art to the nine patents-in-suit, and including named inventors on three patents that were specifically cited in the patents-in-suit.  App. 2-3.  As the Federal Circuit held in *In re Hulu LLC*, No. 2021-142, 2021 WL 3278194, at *3-4 (Fed. Cir. Aug. 2, 2021), the

12

locations of potential prior art witnesses are not to be disregarded in considering this factor.  *See also Juniper Networks*, 14 F.4th at 1319 (noting that the Federal Circuit has rejected "categorical assumptions" that few prior art witnesses are called at trial).

Accordingly, at least three of the private interest factors weigh heavily in favor of this judicial district.  The fourth private interest factor, "other practical problems," is at most neutral.

The public interest factors are: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Boyd*, 2020 WL 5211229, at *2 (citing *Piper*, 454 U.S. at 242 n.6).

The "local interest in deciding localized issues at home" weighs heavily in favor of maintaining this action in this district.  This factor relates to where the "relevant events leading to the infringement claims" occurred.  *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021).  The products at issue are marketed, managed, and sold in the United States from Trend Micro's headquarters in Irving, Texas.  App. 21.  In contrast, no "relevant events" occurred in the Eastern District of Texas.

Moreover, Defendant's proclamation that the Eastern District is its "home venue" (Dkt. 14, at 1) is disingenuous.  Defendant appears to have no physical presence or personnel in the Eastern District.  Indeed, Defendant was only formed as an LLC in Texas within the last 12 months—on May 12, 2021—and only six months before filing its first lawsuit in the Eastern District.  On its Texas Certificate of Formation, the only Texas location Defendant listed was the address of its East Texas outside litigation counsel (Kurt Truelove) and a P.O. Box number.  App. 10-11.  In truth, Defendant's managing entity, Quest Patent Research ("Quest"), is located

in Rye, New York, a short drive or train ride from Manhattan.  App. 13-15.  Defendant does not

have any indicia of operating as a distinct entity—via a website, physical location, or any other

presence—apart from Quest.  App. 17-19.   In sum, Defendant seems to have only a "recent and

ephemeral"—indeed, "artificial"—presence in the Eastern District.  *In re Juniper Networks*, 14

F.4th at 1320; *see also In re Samsung Elecs. Co.*, 2 F.4th at 1379.  Thus, this judicial district has

a far greater interest in deciding issues concerning the accused products and the named parties.

The remaining public interest factors are essentially neutral as to whether venue is more

convenient in this or another forum.  For example, the factor which considers "the administrative

difficulties flowing from court congestion" does not substantially favor one venue over the other.

The Federal Circuit has "described the court congestion factor as the 'most speculative' of the

factors bearing of the transfer decision."  *Juniper Networks*, 14 F.4th at 1322.  This is because "a

court's general ability to set a fast-paced schedule is not particularly relevant"—rather, courts

consider district-wide time-to-trial statistics in weighing this factor.  *Apple, Inc.*, 979 F.3d at

1344.  Because this factor is "speculative" in nature, "when other relevant factors weigh in favor

of transfer or are neutral, then the speed of the transferee district court should not alone outweigh

those other factors."  *Juniper Networks*, 14 F.4th at 1322.  Here, given that the other factors

weigh strongly in favor of maintaining this action within this judicial district, any purported

concerns regarding time to trial Defendant may express should be accorded little weight.

Thus, the Section 1404 factors weigh strongly in favor of this Court exercising its

discretion to maintain this action within this judicial district.  All relevant circumstances indicate

that the first-filed case doctrine should not apply.  Respectfully, this Court should therefore

decline to stay this action or transfer it to the Eastern District.

### B.      This Court Has Subject Matter Jurisdiction Over This Action

Defendant incorrectly contends that this Court lacks subject matter jurisdiction over

Plaintiff's declaratory judgment claims.  Because Defendant's filing of an infringement suit

against Trend Micro Japan, a related foreign entity, coupled with its allegations of direct

infringement by the instant Plaintiff, created an actual case or controversy between Defendant

and Plaintiff, subject matter jurisdiction exists over this declaratory judgment action.

District courts have subject matter jurisdiction over declaratory judgment actions where

"the facts alleged, under all the circumstances, show that there is a substantial controversy,

between the parties having adverse legal interests, of sufficient immediacy and reality to warrant

the issuance of a declaratory judgment." *Teva Pharma. USA, Inc. v. Novartis Pharma. Corp.*,

482 F.3d 1330, 1337 (Fed. Cir. 2007) (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118,

127 (2007)).  While "declaratory judgment jurisdiction generally will not arise merely on the

basis that a party learns of the existence of a patent owned by another or even perceives such a

patent to pose a risk of infringement, without some affirmative act by the patentee[,] . . . Article

III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment

plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he

claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed.

Cir. 2007).  Notably, "suits brought by the patentee against parties other than the declaratory

judgment plaintiffs may suffice to establish a case or controversy . . . if those suits are

sufficiently similar to the one the patentee may potentially bring against the declaratory

judgment plaintiffs." *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 851 F. Supp. 2d

544, 552 (S.D.N.Y. 2012); *see also Danisco U.S. Inc. v. Novozoymes A/S*, 744 F.3d 1325, 1332

(Fed. Cir. 2014) ("[A] history of patent litigation between the same parties involving related

technologies, products, and patents is another circumstance to be considered, which may weigh in favor of the existence of subject matter jurisdiction, as it does here.").

Defendant's filing of a lawsuit for patent infringement against Trend Micro's related foreign entity, identifying products Trend Micro markets and sells within the United States as infringing Defendant's asserted patents, created a "substantial controversy" between Trend and Defendant so as to create declaratory judgment jurisdiction. *E.g.*, *Teva Pharma. USA, Inc.*, 482 F.3d at 1337. Not only does Defendant's infringement complaint name products sold within the United States by Trend Micro, but it also specifically identifies "Trend Micro [Japan] subsidiaries" as direct infringers of the asserted patents. *See* Dkt. 14, Ex. 1, at ¶¶ 38, 49, 60, 75, 88, 104, 119, 133, 145. Defendant's complaint further indicates that it plans to assert that Trend Micro Japan willfully infringed the asserted patents through the activities of its U.S. subsidiaries, namely Plaintiff. *See id.* at ¶¶ 39-40, 50-51, 61-62, 76-77, 89-90, 105-106, 120-121, 134-135, 146-147. Thus, Defendant has taken the "affirmative act" of making allegations in the Eastern District Action (1) regarding related entities—Plaintiff and Trend Micro Japan; and (2) involving the *same* "technologies, products, [and] patents" as those identified in the instant DJ Complaint. *Danisco U.S. Inc.*, 744 F.3d at 1331; *see also Applied Materials, Inc. v. Demaray LLC*, 2021 WL 4222177, at *7 (N.D. Cal. Sept. 16, 2021) ("Viewed in the light most favorable to [declaratory judgment plaintiff,] [defendant] took the affirmative steps of alleging infringement against [the declaratory judgment plaintiff's] products. . . ."). The Eastern District Action is thus a "definite and concrete" action which places Defendant's and Trend Micro's legal interests at odds. *Danisco U.S. Inc.*, 744 F.3d at 1330; *see also Teva Pharma. USA, Inc.*, 482 F.3d at 1337. Defendant's allegations make it clear that Trend Micro "quite reasonably, is more than a 'nervous possible infringer,' even if

[Defendant] is not currently poised on the courthouse steps to sue" Trend Micro. *Danisco U.S. Inc.*, 744 F.3d at 1330.

Consequently, Defendant's claim that there is no controversy between the parties because it has "expressly declined" to name Trend Micro in the Eastern District Action (Dkt. 14, at 5) is unavailing. Even a party's "direct and unequivocal statement that [it] has absolutely no plan whatsoever to sue" the declaratory judgment action is insufficient to undermine any "justiciable controversy" created by the party's actions. *SanDisk Corp.*, 480 F.3d at 1382-83. If the patentee's actions objectively show a "preparedness and willingness to enforce its patent rights," then a justiciable controversy exists which cannot be undermined by the patentee's statements that it will not sue or even by the patentee's inability to sue. *Id.* (citing *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941), *Arrowhead Indus. Water, Inc. v. Echolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988), *overruled on other grounds by MedImmune*, 549 U.S. at 127). Defendant's allegations "demonstrate that it has engaged in a course of conduct that shows a preparedness and a willingness to enforce its patent rights" in connection with Trend Micro's products. *Danisco U.S., Inc.*, 744 F.3d at 1332 (quoting *SanDisk*, 480 F.3d at 1383). This "preparedness and willingness" is not undermined by Defendant's non-committal assertion that it has not yet sued Trend Micro for infringement. *SanDisk Corp.*, 480 F.3d at 1382-83.

Defendant's contention that it could not sue or recover from both Trend Micro Japan and the instant Plaintiff is inadequately explained and in any event irrelevant. Defendant cites only one case, *Aero Products*, to support its claim that any damages it could recover from Plaintiff would constitute an "impermissible double recovery." *See* Dkt. 14, at 5 (citing *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1020 (Fed. Cir. 2006)). In *Aero Products*, however, the court held that the plaintiff could not recover damages for trademark and patent

infringement against a single defendant, where the plaintiff's damages under each claim were based on an identical set of sales of the relevant products.  466 F.3d at 1019.  That is not the situation here, and Defendant does not explain how the holding of *Aero Products* would apply to this case.  In fact, parent holding companies and operating subsidiaries are often sued in the same case; the subsidiaries may be necessary or indispensable (or desirable) parties under Rule 19.

Because Defendant's filing of the Eastern District Action created a substantial, justiciable controversy between Trend Micro and Defendant, subject matter jurisdiction exists and the Court should deny Defendant's Motion to Dismiss.

### C.       Plaintiff's DJ Complaint Adequately Pleads Non-infringement

Plaintiff's DJ Complaint adequately states claims for non-infringement of the asserted patents, particularly when viewed in light of Defendant's meager infringement allegations to date.  As Defendant observes, declaratory judgment plaintiffs are subject to the same pleading standard as infringement plaintiffs.  *See* Dkt. 14, at 11 (citing cases analyzing complaints for both infringement and for declaratory judgment of noninfringement).  Under this standard, the complaint must present "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Disc Disease Sols., Inc. v. VHG Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "This plausibility standard is met when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . 'Specific facts are not necessary; the statement need only give the defendant fair notice of what the [] claim is and the ground upon which it rests.'"  *Disc Disease Sols., Inc.*, 888 F.3d at 1260 (internal citations omitted) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *Iqbal*, 556 U.S. at 678; *Erickson v. Pardus*, 551 U.S. 89, 93, (2007)).  Ultimately, "[t]he level of detail required in any given case will vary depending upon a number

18

of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the [accused products]." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). In cases involving straightforward technology, a pleading sufficiently states a claim where it identifies the relevant patents and products, and alleges that those products do not meet any claim limitation of the relevant patents. *See Disc Disease Sols. Inc.*, 888 F.3d at 1260 (finding infringement complaint stated a claim where it "merely allege[d] that certain of Defendants' products meet each and every element of at least one claim of Plaintiff's patents").

Trend Micro's DJ Complaint presents factual allegations which meet the plausibility standard, at least when viewed in light of Defendant's allegations to date. *First*, there is no record thus far that this case is one which would necessarily require a high level of detail. *See Bot M8, LLC*, 4 F.4th at 1353. Defendant is well aware of the patents and products at issue given that it accused the same products under the same patents in the Eastern District Action. Defendant also has not provided any infringement contentions at this point; nor has it provided any charts showing its particularized allegations for any asserted patent claims. Indeed, the totality of Defendant's allegations as to each of the nine patents-in-suit is contained in a few summary paragraphs merely parroting excerpts from the broadest claim(s). *Second*, the DJ Complaint "identifies the relevant patents and products." *See* Dkt. 1, at ¶¶ 9-17, 20-25; *Disc Disease Sols., Inc.*, 888 F.3d at 1260. *Third*, the DJ Complaint alleges "that those products do not meet any claim limitation of the relevant patents." *See* Dkt. 1, at ¶¶ 33, 37, 41, 45, 49, 53, 57, 61, 65; *Disc Disease Sols., Inc.*, 888 F.3d at 1260. Given that Defendant has accused the relevant products of infringement with little or no detail, the allegations of Trend Micro's DJ Complaint are more than sufficient to "give the defendant fair notice of what the [] claim is and

the ground upon which it rests." *Id.* Because Trend Micro describes the relevant products, the asserted patents, and the basis for its claims of non-infringement, the DJ Complaint states a claim for declaratory judgment of non-infringement.

In the event that the Court disagrees that Trend Micro has stated a plausible claim for non-infringement, Trend Micro should be permitted leave to amend its DJ Complaint. It is common practice "for plaintiffs who oppose a motion to dismiss to request leave to amend in the event the motion is granted." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Indeed, "granting leave to amend is especially appropriate when the trial court has dismissed the complaint for failure to state a claim." Thus, "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . ." *Id.* In the event the Court concludes that Trend Micro has failed to state a claim, Trend Micro respectfully requests leave to amend its DJ Complaint.

## IV.   CONCLUSION

In short, the Eastern District of Texas was not a proper venue in which Defendant's patent infringement allegations concerning the patents-in-suit could have or should have been brought. This judicial district is the correct venue under the applicable venue law in view of the facts and circumstances presented. Defendant's arguments for dismissal and for a stay or transfer of this action lack merit and should be rejected. Accordingly, Defendant's Motion to Dismiss should be denied and this case should proceed.

Dated: May 5, 2022

Respectfully submitted,

By: */s/ Gilbert A. Greene*
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterarnett.com
Scott W. Breedlove
Texas Bar No. 00790361
sbreedlove@carterarnett.com
Nathan Cox
Texas Bar No. 24105751
ncox@carterarnett.com
CARTER ARNETT PLLC
8150 N. Central Expressway
Suite 500
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

D. Stuart Bartow (*pro hac vice* pending)
dsbartow@duanemorris.com
DUANE MORRIS LLP
2475 Hanover Street
Palo Alto, CA 94304
Tel:   650-847-4150
Fax:   650-618-8505

Gilbert A. Greene (TX Bar No. 24045976)
BGreene@duanemorris.com
DUANE MORRIS LLP
Las Cimas IV
900 S. Capital of Texas Hwy, Suite 300
Austin, TX 78746-5435
Tel:     512-277-2300
Fax:     512-277-2301

Holly Engelmann (TX Bar No. 24040865)
HEngelmann@duanemorris.com
Duane Morris LLP
100 Crescent Court, Suite 1200
Dallas, TX 75201
Tel:     214-257-7200
Fax:     214-257-7201

*Attorneys for Plaintiff*
*Trend Micro, Inc.*

21